**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Mark Merle Reams, | ) | No. CIV 10-640-TUC-GEE |
| Plaintiff, | ) ) ) | **ORDER** |
| vs. | ) ) | |
| Michael J. Astrue, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §1383(c)(3). The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73.

The Magistrate Judge concludes the final decision of the Commissioner must be reversed. The Commissioner's decision is not supported by substantial evidence and free from legal error. The case will be remanded for payment of benefits.

PROCEDURAL HISTORY

On April 29, 2008, Reams filed an application for supplemental security income. (Tr. 103). He alleged disability beginning on February 1, 2008, due to "mental problems." (Tr. 103, 123, 132). His claim was denied initially (Tr. 59) and upon reconsideration. (Tr. 64). Reams

requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Milan M. Dostal on October 18, 2009. (Tr. 21, 68, 69). In his decision, dated February 25, 2010, the ALJ found Reams was not disabled. (Tr. 10-18).

Reams appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-3); *Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989). Reams subsequently filed the instant action appealing the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a).

Claimant's Work History and Medical History

Reams worked from 1997 to 1999 as an assembler at the Weiser lock company. (Tr. 139). From 1999 to 2000, he worked as a machine operator. *Id*. From 2001 to 2008, he worked as a laborer and landscaper. *Id*. The earnings record indicates that Reams has never earned more that $6,700 per year since 1996. (Tr. 116-17).

Reams alleged disability beginning on February 1, 2008, due to "mental problems." (Tr. 103, 123, 132). The record contains treatment notes from La Frontera Center, Inc., starting in June of 2006 and extending to September of 2008. (Tr. 325-49, 406-41). At various times, Reams was treated with anti-depressants, Prozac and Doxepin; anti-anxiety medication, Ativan; and mood stabilizers, Seroquel and Neurontin. (Tr. 325-27, 341). Various treatment records document an Axis I diagnosis of (1) mood disorder, not otherwise specified, and (2) alcohol dependency. (Tr. 332, 336, 341, 416).

In June of 2008, Randal J. Garland, Ph.D., reviewed the medical record and completed a Psychiatric Review Technique form. (Tr. 354). He documented (1) Affective Disorders and (2) Substance Addiction Disorder - Alcohol Dependence. (Tr. 354, 362). He found moderate limitation in "Maintaining Concentration, Persistence or Pace" and mild limitation in "Activities of Daily Living" and "Maintaining Social Functioning." (Tr. 364). Garland completed a Mental Residual Functional Capacity Assessment. (Tr. 350). He found moderate limitation in Reams' "ability to maintain attention and concentration for extended periods," "ability to complete a normal workday and workweek . . . and to perform at a consistent pace . . . ," and

"ability to respond appropriately to changes in the work setting." (Tr. 350-51). Garland opined that Reams could "[u]nderstand, carry out, and remember simple instructions" and could perform "unskilled work on a sustained basis." (Tr. 352).

In November of 2009, Reams was examined by a psychologist, Denny L. Peck, Ph.D. (Tr. 505-17). Peck reviewed the record, conducted clinical interviews, and administered psychological testing, the MMPI-2. *Id.* Peck offered the following diagnosis:

Axis I:    295.70  Schizoaffective Disorder Depressive Type
           303.90  Alcohol Dependence in recent remission
Axis II:   301.6  Dependent Personality Disorder
Axis III:  Closed head trauma; Fatigue; Multiple wrist surgeries
Axis IV:   GAF 50
Axis V:    Problems with Social and Occupational Functioning.

(Tr. 513). Peck found Reams markedly limited in the "ability to remember locations and work-like procedures," the "ability to carry out detailed instructions," the "ability to perform activities within a schedule, maintain regular attendance, and be punctual," the "ability to sustain an ordinary routine without special supervision," the "ability to work in coordination with or proximity to others without being distracted by them," the "ability to complete a workday and workweek without interruptions from psychologically based symptoms . . . ," the "ability to interact appropriately with the general public," the "ability to accept instructions and respond appropriately to criticism from supervisors," the "ability to get along with co-workers or peers . . . ," the "ability to maintain socially appropriate behavior . . . ," the "ability to respond appropriately to changes in the work setting," the ability to take appropriate precautions when faced with normal hazards, and the "ability to set realistic goals or make plans independently of others." (Tr. 500-03).

In October of 2007, Reams injured his wrists in two separate accidents. (Tr. 488). Joseph E. Sheppard, M.D. diagnosed bilateral scapholunate dissociations. (Tr. 489). Surgery was performed on the left wrist on March 14, 2008. (Tr. 464). Surgery was performed on the right wrist on June 9, 2008. (Tr. 498).

1  On October 14, 2009, Reams appeared with counsel at a hearing before ALJ Milan
2 Dostal. (Tr. 10). He explained he was 44 years old and had completed 12 years of schooling.
3 (Tr. 23, 129). He lives with his parents who are retired. (Tr. 35).

4  Reams said he was previously employed in maintenance, landscaping, and warehouse
5 work. (Tr. 24-28). Before that, he worked as a machine operator and as an assembler. (Tr. 29).

6  Reams explained that in the early '80s, he had a head injury and was placed in intensive
7 care. (Tr. 40, 488). Since then, he has had problems with memory, concentration,
8 comprehension, equilibrium, and hearing. (Tr. 40-41). He takes Prozac and Seroquel for
9 depression. (Tr. 30, 32).

10  He also has pain in his wrists, legs, and lower back. (Tr. 31). He has had surgery on his
11 left elbow, left ankle, and both wrists. (Tr. 41).

12  Reams has a driver's license but no car. (Tr. 36). He has a few friends, but he does not
13 see them often. (Tr. 36). He likes building model airplanes. (Tr. 36). He stated "I don't get out
14 a lot." (Tr. 32).

15  Stacia Schonbrun testified at the hearing as a vocational expert. (Tr. 45, 85). She opined
16 that a person with slight physical impairment in the wrists, elbows, and ankles and moderate
17 mental impairments involving memory and comprehension but who still retained the ability to
18 understand and carry out simple instructions would still be able to perform Reams' past work
19 as an assembler. (Tr. 47-50). Such an individual could also work as a parking lot attendant or
20 auto detailer. (Tr. 51).

21

22  CLAIM EVALUATION

23  Social Security Administration (SSA) regulations require that disability claims be
24 evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter*
25 *v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of
26 whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4),
27 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.* If the
28 claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which

requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[1] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id.* If the claimant cannot perform any past work, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20 C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 5 -

1094, 1101 (9th Cir. 1999).  The grids calculate whether or not the claimant is disabled based on the claimant's exertional ability, age, education, and work experience. *Id.*  The grids are a valid basis for denying claims where they completely and accurately describe the claimant's abilities and limitations.  *Id.* at 1101-02.  If the claimant has only exertional limitations, the claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).

If the claimant has significant non-exertional limitations, the grids do not apply. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993).  "Non-exertional limitations are limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If significant non-exertional limitations prevent the claimant from performing the full range of work in any exertional category, the ALJ must take the testimony of a vocational expert to deny the claim. *Id.* at 1341.

If the claimant has both exertional and non-exertional limitations, the ALJ must consult the grids first before considering the testimony of a vocational expert at step five. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).  If the grids direct a finding of disability, that finding must be adopted by the Commissioner. *Lounsburry,* 468 F.3d at 1116.

### The ALJ's Findings

At step one of the disability analysis, the ALJ found Reams "has not engaged in substantial gainful activity since April 21, 2008, the application date. . . ." (Tr. 12).  At step two, he found Reams has "the following severe impairments: depression, alcohol dependence and dependent personality disorder. . . ." (Tr. 12).  At step three, the ALJ found Reams' impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 12). The ALJ then analyzed Reams' residual functional capacity (RFC). (Tr. 26).   He found Reams "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Claimant can occasionally push and pull with both hands.  Claimant

1 experiences pain in his elbows, wrists, ankles and muscles that is of a slight nature and would 2 have a slight effect on his ability to perform work related activities. . . . Claimant also has some 3 psychiatric problems in the form of depression and anxiety with symptoms including 4 forgetfulness and decrease in memory and comprehension that are of a moderate nature and 5 would have a moderate effect on his ability to perform work related tasks. . . . He can 6 understand, remember and carry out simple instructions and respond appropriately to 7 supervisors, co-workers and work situations." (Tr. 13-14). At step four, the ALJ found Reams 8 could perform his past relevant work as an assembler. (Tr. 16). At step five, the ALJ found, 9 in the alternative, that Reams could work as a parking lot attendant (DOT # 915.473-010) or 10 auto detailer (DOT # 915.687-034). (Tr. 17, 53).

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*.

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider

the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

## DISCUSSION

Reams presents three claims of error:

(1) The ALJ improperly concluded at step four of the disability analysis that Reams could perform his past relevant work as an assembler.

(2) The ALJ improperly discounted the opinion of Reams' examining physician,[2] Denny L. Peck, Ph.D.

(3) The ALJ improperly concluded at step five of the disability analysis that Reams could work as a parking lot attendant or auto detailer.

(Doc. 15) The Commissioner concedes the ALJ erred in finding that Reams' work as an assembler constitutes past relevant work. (Doc. 16, p. 7)

The court concludes the ALJ improperly discounted the opinion of Reams' examining physician, Denny L. Peck, Ph.D. (Tr. 15-16). The decision of the ALJ therefore is not supported by substantial evidence and free from legal error. The court does not reach Reams' third claim of error.

In November of 2009, Peck performed a consultative examination of Reams' mental condition. (Tr. 500-17). He reviewed the record, conducted clinical interviews and administered psychological testing, the MMPI-2. *Id.* Peck offered the following diagnosis:

```
Axis I:     295.70  Schizoaffective Disorder Depressive Type
            303.90  Alcohol Dependence in recent remission
Axis II:    301.6   Dependent Personality Disorder
Axis III:   Closed head trauma; Fatigue; Multiple wrist surgeries
Axis IV:    GAF 50
Axis V:     Problems with Social and Occupational Functioning.
```

(Tr. 513). Peck found Reams was markedly limited in many functional areas including "understanding and memory," "concentration and persistence," "social interaction," and "adaptation." *Id*.

The ALJ, however, rejected Peck's opinion in favor of that of the non-examining state agency physician, Randall Garland, Ph.D. (Tr. 16). Peck, however, is an examining physician, and his opinions should trump the opinions of a non-examining physician unless the ALJ

---

[2] The term "physician" includes psychologists and other health professionals who are not medical doctors. *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir. 1995).

- 9 -

provides "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996); *see also Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (applying the "specific and legitimate" test).

In his decision, the ALJ explained he discounted Peck's opinion because it was "inconsistent with the record as a whole and with Dr. Peck's own clinical interview." (Tr. 16). Specifically, the ALJ had the following concerns:

> For example, Dr. Peck stated claimant would have difficulty traveling to new places and using public transportation, however his report states that claimant took the bus to the evaluation and was able to arrive to his office early, even though he had never been there before. Claimant was even capable of inquiring from strangers where exactly the office was located, which is contrary to Dr. Peck's assessment that he is not able to relate or interact appropriately with others.

(Tr. 15-16). The ALJ, however, misinterpreted Peck's assessment.

Peck opined that Reams was "mildly limited" in his "ability to travel in unfamiliar places or to use public transportation." (Tr. 503). He specifically noted that "[Reams] is easily overwhelmed – he can take the bus at times." *Id*.

Peck's opinion is that Reams' ability to use public transportation and travel to unfamiliar places is mildly limited, but not so limited as to preclude his ability to take the bus at times. Peck's opinion is not inconsistent with the fact that Reams took the bus to Peck's office.

Peck further opined that Reams' "ability to interact appropriately with the general public" varies from "moderately limited" to "markedly limited." (Tr. 502). He specifically noted that "[Reams] cannnot normally converse except superficially." *Id*. "He cannot generally aid himself." *Id*. On the other hand, Peck noted that "[h]e can ask for basic assistance." *Id*.

Peck's opinion is that Reams is unable to conduct meaningful conversations with strangers beyond asking for basic assistance. Peck's opinion is not inconsistent with the fact that Reams did not know where to go when the bus dropped him off, but he was able to ask for assistance.

Peck's opinion of Reams' functional limitations is not inconsistent with his clinical interview. The ALJ's stated concerns do not constitute "specific and legitimate" reasons for discounting Peck's psychological evaluation.

1  The Commissioner further argues the ALJ properly discounted Peck's opinion as
2  "inconsistent with the record as a whole." The ALJ, however, did not explain specifically what
3  aspects of the record he had in mind when he offered this assessment or why he believed Peck's
4  opinions were inconsistent. "The ALJ must do more than offer his conclusions." *Orn v. Astrue*,
5  495 F.3d 625, 632 (9th Cir. 2007); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). "He
6  must set forth his own interpretations and explain why they, rather than the doctors', are
7  correct." *Id.* The ALJ's conclusory statement does not constitute a "specific and legitimate"
8  reason for discounting Peck's psychological evaluation.

9  The Commissioner suggests this phrase, "inconsistent with the record as a whole," means
10  that Peck's opinion that Reams is markedly limited in his ability to perform several work related
11  tasks is inconsistent with Reams' mental health treatment notes, which were "relatively benign,
12  indicating only mild or moderate symptoms." (Doc. 16, p. 6) He further suggests Peck's
13  opinion of disability is inconsistent with the fact that Reams' treating physicians "did not give
14  long-term limitations on his ability to work or suggest that he was disabled." *Id.* The ALJ,
15  however, did not advance these arguments in his decision. The court, therefore, cannot consider
16  them. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Pinto v. Massanari*, 249 F.3d
17  840, 847-48 (9th Cir. 2001).

18  The ALJ failed to give specific and legitimate reasons for crediting the opinion of the
19  state agency non-examining physician over the opinion of Reams' examining physician, Denny
20  L. Peck, Ph.D.. Accordingly, Peck's opinion as to Reams' mental impairments should be
21  credited as a matter of law. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Lester v.
22  Chater*, 81 F.3d 821, 834 (9th Cir. 1996) ("Where the Commissioner fails to provide adequate
23  reasons for rejecting the opinion of a treating or examining physician, we credit that opinion as
24  a matter of law.").

25  "Where we conclude that a claimant's testimony or a doctor's opinion should have been
26  credited and, if credited, would have led to a finding of eligibility, we may order the payment
27  of benefits." *Regennitter v. Commissioner*, 166 F.3d 1294, 1300 (9th Cir.1999); *see also Moore
28  v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir.2002) (remanding for payment of

- 11 -

1  benefits where the ALJ improperly rejected the testimony of the plaintiff's examining
2  physicians). In this case, the ALJ improperly discounted the opinion of Reams' examining
3  physician. Crediting this opinion leads necessarily to a finding of disability.

4  Peck opined that Reams' functional impairment was so severe that Reams was limited
5  to part-time work, "1-3 hours per day, 2-3 days per week." (Tr. 502-03). At the hearing, the
6  vocational expert testified that a person who could only work four days per week "would be
7  precluded from employment." (Tr. 54). Crediting Peck's opinion indicates Reams cannot work
8  full-time and is therefore disabled. *See* SSR 96-8p; *see also Rollins v. Massanari*, 261 F. 3d
9  853, 859 (9th Cir. 2001) ("An ability to keep to an 8-hour a day, 5-day a week schedule without
10 accumulating too many absences is a pre-requisite for many jobs."); *Bladow v. Apfel*, 205 F.3d
11 356, 359 (8th Cir. 2000).

12 There are no outstanding issues to be resolved. Remand of the case would serve no
13 useful purpose. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) ("We may direct an
14 award of benefits where the record has been fully developed and where further administrative
15 proceedings would serve no useful purpose."). A finding of disability should be entered. *See*
16 *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

18 IT IS ORDERED that the final decision of the Commissioner is reversed. The case is
19 remanded for payment of benefits.

20 The Clerk of the Court is instructed to enter judgment accordingly and close this case.

22 DATED this 9th day of June, 2011.

Glenda E. Edmonds
United States Magistrate Judge